# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 15-524


RUDOLPH WAMBSGANS, III

VERSUS

CHRISTY O'QUIN


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2013-9605-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED.**


Conery, J., concurs in result.

**David Charles Laborde**
**Andrew B. Mims**
**The LaBorde Law Firm**
**P. O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
     **Rudolph Wambsgans, III**

**Brian K. Thompson**
**Attorney at Law**
**2915 Jackson Street**
**Alexandria, LA 71301**
**(318) 473-0052**
**COUNSEL FOR DEFENDANT-APPELLANT:**
     **Christy O'Quin**

**PICKETT, Judge.**

Christy O'Quin appeals a judgment of the trial court denying her exception of prescription and casting her in judgment in the amount of $23,373.60 for a loan payable to Rudolph Wambsgans, III.

## STATEMENT OF THE CASE

Mr. Wambsgans and Ms. O'Quin were romantically involved in July 2010. On July 8, 2010, Mr. Wambsgans received the proceeds from two loans to him from Cottonport Bank in the amount of $25,000.00. On July 9, 2010, Mr. Wambsgans wrote Ms. O'Quin a check in the amount of $25,000.00. He told her it was a loan for her business and wrote the notation "B/L" in the memo line. The couple did not discuss the terms of the loan at that time. Ms. O'Quin wrote "Business Loan" on the memo line, and deposited the check into her company's account. On September 4, 2010, Mr. Wambsgans and Ms. O'Quin were married.

During the marriage, Ms. O'Quin made sixteen payments from a joint checking account on one of the loans that Mr. Wambsgans secured before they married. It is undisputed that these were community property funds used to pay Mr. Wambsgans' separate debt. The total amount of these payments was $5,252.80.

Mr. Wambsgans and Ms. O'Quin were not destined to be together forever, and the couple separated on January 27, 2012. Mr. Wambsgans sent a letter to Ms. O'Quin on May 16, 2013, demanding repayment of the loan. Mr. Wambsgans filed suit against Ms. O'Quin on August 12, 2013, alleging she owed him $25,000.00 for a business loan, less credits made for partial payments made.

Ms. O'Quin argued that the money was a gift in contemplation of marriage. She also filed an exception of prescription claiming that, pursuant to La.Civ.Code

art. 3494(3), an action for money lent prescribes in three years. Mr. Wambsgans' suit was filed on August 12, 2013, more than three years after he initially gave her the money on July 9, 2010. In response, Mr. Wambsgans argued that each of the payments Ms. O'Quin made from the joint account to pay the loan he secured from Cottonport Bank during the marriage interrupted prescription. Since the last payment was made on January 17, 2012, his claim would not prescribe until three years from that date. Alternatively, he argued that the appropriate prescriptive period was five years because it was an action on a note, citing La.Civ.Code art. 3498.

Following a bench trial, the trial court denied the exception of prescription, finding that Mr. Wambsgans made the loan to Ms. O'Quin via an instrument, and it was payable on demand. Thus, payment became due when payment was demanded by Mr. Wambsgans by letter dated May, 16, 2013, and thus the suit was filed within the prescriptive period. (It is unclear whether the trial court determined whether the applicable prescriptive period as three years (an action on money lent, La.Civ.Code art. 3494(3)) or five years (an action on an instrument, La. Civ. Code art. 3498).) The trial court further found that $25,000.00 payment to Ms. O'Quin was a loan, not a gift. After applying a credit to the loan for $2,626.40, the trial court awarded Mr. Wambsgans $23,373.60. Ms. O'Quin now appeals.

## ASSIGNMENTS OF ERROR

On appeal, Ms. O'Quin asserts three assignments of error:

1.  The trial court committed manifest error and was clearly wrong when it denied the Peremptory Exception of Prescription by determining that payment became exigible on or about May 16, 2013 when Appellee made demand through counsel.

2.    The trial court committed manifest error and was clearly wrong when it denied the Peremptory Exception of Prescription by finding that this was an action on an instrument, that being a loan from Appellee to Appellant via a check.

3.    The trial court committed manifest error and was clearly wrong when it applied monthly payments made by Appellant to a third party as credit towards the open account thereby extending the timeline for prescription.

## DISCUSSION

The exception of prescription in this case was heard at the same time as the trial on the merits of the case.  When evidence is introduced to support an exception of prescription, an appellate court reviews the factual findings of the trial court under the manifest error standard of review.  *Wright v. Christus Health Ctr. Louisiana*, 14-970 (La.App. 3 Cir. 2/4/15), 157 So.3d 1147, *writ denied*, 15-819 (La.6/5/15), 171 So.3d 948.

We note that on appeal, Ms. O'Quin does not contest the trial court's finding that the money given to her by Mr. Wambsgans was a loan and not a gift.  The only issue presented in her brief is whether Mr. Wambsgans' claim to recover the money lent is prescribed.

It is clear from the record that Mr. Wambsgans and Ms. O'Quin did not discuss the terms of the loan on the date he handed her the check.  Mr. Wambsgans knew that Ms. O'Quin's business was struggling financially, and he procured two loans from Cottonport Bank in order to loan the money to Ms. O'Quin.  He restructured a previous loan secured by his per capita payment from the Indian tribe and received $15,000.00.  The second loan was an unsecured $10,000.00 loan payable in installments of $328.30.

In her second assignment of error, Ms. O'Quin argues that the trial court erred in finding that a five-year prescriptive period on instruments and promissory

3

notes was applicable. The trial court's reasons for ruling do not clearly indicate whether the trial court ruled this action was subject to a three-year prescriptive period or a five-year prescriptive period. We find that the proper prescriptive period was a three-year period for money lent pursuant to La.Civ.Code art. 3494(3). The fact that Mr. Wambsgans wrote a check to Ms. O'Quin to transfer the money does not convert the action to a five-year prescriptive period.

We also find the trial court erred in finding that prescription did not begin to run until Mr. Wambsgans sent a letter to Ms. O'Quin demanding payment in May 2013. The law in Louisiana has long been that prescription on an action to recover money lent begins to run from the date payment is exigible, not the date of demand. *Darby v. Darby*, 120 La. 847, 45 So. 747 (1908). "[I]f a demand note were not prescriptible until demanded, the parties to it would have discovered a mode by which prescription would not run upon an obligation exigible immediately[.]" *Id.* at 748. In this case, Mr. Wambsgans had a right to bring an action to recover the money he lent to Ms. O'Quin from the moment he lent it to her.

We do find, though, that Ms. O'Quin acknowledged the $25,000.00 debt she owed to Mr. Wambsgans by making payments on the $10,000.00 note to Cottonport Bank from a joint checking account during the marriage. The evidence adduced at trial showed that Ms. O'Quin knew that Mr. Wambsgans borrowed money from Cottonport Bank in order to give her the $25,000.00. She testified that she thought that he was using his "Indian money" to pay the loan. The trial court found that Ms. O'Quin's testimony was not credible when she stated she only learned on the day of the trial that all $25,000.00 was loaned to Mr. Wambsgans by Cottonport Bank. We will not disturb that credibility determination.

4

We find that prescription was interrupted by the monthly payments on the separate debt of Mr. Wambsgans made by Ms. O'Quin during the marriage from a community checking account. The last of these payments was made on January 17, 2012. This, the three-year prescriptive period had not run when Mr. Wambsgans filed suit on August 21, 2013.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Ms. O'Quin.

**AFFIRMED.**